## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| **MARTHA DELORES MEDINA AND** | § | |
| **DONATO MEDINA, JR.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 7:18-cv-229** |
| | § | |
| **MIDFIRST BANK; MIDLAND** | § | |
| **MORTGAGE CO.; AND BARRETT,** | § | |
| **DAFFIN, FRAPPIER, TURNER &** | § | |
| **ENGEL, L.L.P.,** | § | |
| **Defendants.** | § | |

## DEFENDANT MIDFIRST BANK'S MOTION TO DISMISS

TO THE HONORABLE COURT:

Pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure, Defendant MidFirst Bank ("MidFirst")[1] files this Motion to Dismiss and respectfully shows the Court the following:

## I. FACTS

1.      Plaintiffs Donato Medina, Jr. and Martha D. Medina ("Medinas" or "Plaintiffs") are the owner of certain real property located at 1701 Orchid Avenue, McAllen, Texas 78501 (hereinafter the "Property"). Donato Medina executed a Note in favor of Valley Mortgage Company, Inc. in the amount of $73,080.00. Both Donato Medina, Jr. and Martha Medina executed the Deed of Trust that same day, which was recorded in the Official Public Records of

---

[1] Plaintiff has improperly named "Midland Mortgage Co." who has had no involvement with the subject matter since 2011. Plaintiff's claims relate to occurrences after 2011. It is believed Plaintiff intended to reference the servicing division that is part of MidFirst Bank referred to as Midland Mortgage. Midland Mortgage is not a separate entity from MidFirst Bank but is merely a division within MidFirst Bank.

Hidalgo County under Document No. 1281662. A copy of the Deed of Trust is attached as **Exhibit A**.[2]

2.      Valley Mortgage Company, Inc. transferred the lien to Washington Mutual Bank, FA on or about December 26, 2003. That Assignment was recorded in the Official Records of Hidalgo County on January 23, 2004 under Document No. 1289232. On December 11, 2006, Washington Mutual Bank f/k/a Washington Mutual Bank, FA assigned the Deed of Trust to Wells Fargo Bank, NA.   That Assignment was recorded in the Official Records of Hidalgo County on December 12, 2006 under Document No. 2006-1697207. On November 23, 2009, Wells Fargo Bank, NA assigned the Deed of Trust to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for MidFirst Bank. That Assignment was recorded in the Official Records of Hidalgo County on December 8, 2009 under Document No. 2009-2057139.  MERS assigned the Deed of Trust to MidFirst Bank on January 5, 2011.  This assignment is recorded in the Official Records of Hidalgo County on January 14, 2011 in Instrument Number 2011 2170348.

3.      Plaintiffs entered into a third loan modification agreement in February 23, 2017, which modified the terms of the loan. [Doc. 1-1, Page 6, at ¶ 4.1 and Page 32 - 43]  Following the modification of the loan, Plaintiffs were unable to make their mortgage payments. [*Id*., at ¶ 4.2]  Payments under the Loan Agreement have not been made. Consequently, MidFirst began foreclosure. [*Id.,* at ¶ 4.3 and 4.4]

---

[2] MidFirst requests the Court take judicial notice of the Deed of Trust as it is a matter of public record. *Insuremax Insurance Agencies, Inc. v. AEA Insurance Agencies, Inc.,* Civil No. SA-13-CA-317-FB, 2014 WL 12481353, at *8 (W.D.Tex. Nov. 6, 2014) (citing *Wilson v. Bimberg,* 667 F.3d 591, 600 (5th Cir. 2012) (When evaluating a motion to dismiss or a motion for judgment on the pleadings, the Court is not limited literally to the pleadings on their face, but may also consider "documents attached to or incorporated into the complaint" and "may take judicial notice of matters of public record" that are "distinctly relevant to the issue at hand.").

4.      Notably, this is at least the third loan modification Plaintiffs have entered into. Specifically, Plaintiffs entered into their first loan modification on May 31, 2011. That loan modification was recorded in the Official Records of Hidalgo County on June 21, 2011 under Document No. 2011-2216444.  A true and correct copy of that agreement is attached as **Exhibit B**.[3] Plaintiffs entered into their second loan modification on July 23, 2013. That loan modification was recorded in the Official Records of Hidalgo County on September 25, 2013 under Document No. 2013-2450921. A true and correct copy of that agreement is attached as **Exhibit C**.

5.      Plaintiffs concede they defaulted on the loan and foreclosure proceedings were underway. The Property was noticed for foreclosure sale on July 3, 2018. However, Plaintiffs filed this lawsuit on July 2nd to stop the foreclosure sale. [*Id.*, at Pages 4 and 7, at ¶ 4.5] Plaintiffs obtained a temporary restraining order on July 3, 2018, which prevented the foreclosure sale. [Doc. 1-1, Pages 2 and 50-51] The case was removed to this Court on July 16, 2018. [Doc. 1-1].

6.      Plaintiffs assert causes of action for wrongful foreclosure, negligence, negligent misrepresentations, negligence per se, fraud, intentional infliction of emotional distress and breach of contract. Plaintiffs' Complaint requests injunctive relief based on an intended foreclosure and fails to allege that a foreclosure sale actually took place. With regard to Plaintiffs' negligence based claims, Texas law does not allow the right to assert negligence related claims when the subject matter of the lawsuit is governed by a contract. Further, intentional infliction of emotional distress is not a recognized cause of action in Texas. For these reasons, the Court should dismiss Plaintiffs' claims with prejudice.

---

[3] MidFirst requests the Court take judicial notice of the loan modification agreements attached as Exhibits B and C as they are matters of public record. *See Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011); *see also Insuremax Insurance Agencies, Inc. v. AEA Insurance Agencies, Inc.,* Civil No. SA-13-CA-317-FB, 2014 WL 12481353, at *8 (W.D.Tex. Nov. 6, 2014).

## II. RULE 12(b)(6) and 12(c) STANDARDS

7.      *Rule 12(b)(6) Standard:*  In order to survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  A 12(b)(6) motion is proper if either the Petition fails to assert a cognizable legal theory or the facts asserted are insufficient to support relief under a cognizable legal theory.  *See Stewart Glass & Mirror, Inc. v. Glas, Inc.*, 940 F.Supp.1026, 1030 (E.D. Tex. 1996). "However, conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as factual allegations will not suffice to prevent the granting of a motion to dismiss."  *Percival v. American Home Mortgage Corp.,* 469 F.Supp.2d 409, 412 (N.D. Tex. 2007).  "[A] plaintiff must plead specific facts, not mere conclusory allegations, to avoid dismissal for failure to state a claim."  *See Kane Enters v. MacGregor (USA), Inc.,* 322 F.3d 371, 374 (5th Cir. 2003).  While the allegations need not be overly detailed, a plaintiff's pleadings must still provide the grounds of his entitlement belief, which "requires more than labels and conclusions, and a formulaic recitation of the elements will not do."  *Twombly*, 127 S. Ct. at 1964-1965; *see also Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995).

8.      *Rule 12(c) Standard:*  "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and judgment on the merits of the case can be determined by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir.2002). "In considering a Rule 12(c) motion, the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir.2001). "The Court "must look only to the pleadings and accept all allegations contained therein as true." *United States v. Renda Marine, Inc.,* 667 F.3d 651, 654

(quoting *Brittan Communs. Int'l Corp. v. Sw. Bell Tel. Co.,* 313 F.3d 899, 904 (5th Cir.2002)). "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Id.* at 654–55 (quoting *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir.2007)).

9.      "A motion under Rule 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Guidry v. Am. Pub. Life Ins. Co.,* 512 F.3d 177, 180 (5th Cir.2007); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007). The Court must accept the plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). "A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir.1991)).

10.      "Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *See Frith v. Guardian Life Ins. Co. of Am.,* 9 F.Supp.2d 734, 737–38 (S.D.Tex.1998). "While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating the *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations

omitted). "Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.; Nationwide Bi–Weekly Admin., Inc. v. Belo Corp.,* 512 F.3d 137, 140 (5th Cir.2007)

## III. ARGUMENTS & AUTHORITY

### A.     Plaintiffs' wrongful foreclosure claim fails.

11.     Plaintiffs filed this suit the day *before* the foreclosure sale seeking an injunction preventing sale. [Doc. 1-1, Page 8 at ¶ 5.1]   The Court's record shows that a temporary injunction issued on July 3, 2018 preventing sale. [Doc. 1-1, Pages 2 and 50-51]   Consequently, the Property was not sold at foreclosure. Further, Plaintiffs fail to plead a claim for wrongful foreclosure. They simply state they are seeking "to prevent the wrongful foreclosure" of the Property. *Id.*

12.     A claim for wrongful foreclosure cannot succeed when no foreclosure has occurred. *Foster v. Deutsche Bank National Trust Company,* 848 F.3d 403, 406 (5th Cir. 2017). Here, Plaintiffs failed to allege that a foreclosure occurred. Therefore, they failed to assert a cause of action for wrongful foreclosure and their claim must be dismissed.

### B.     Plaintiffs' tort claims are barred by the economic loss rule.

13.     Plaintiffs assert four tort claims challenging foreclosure—intentional infliction of emotion distress, negligence, negligent misrepresentation and negligence *per se*. [Doc. 1-1, Page 8 at ¶¶ 5.3 – 5.5 and 5.9]   Texas courts consistently prohibit tort claims under the economic loss rule if the parties' relationship and attendant duties arise from a contract. *See, e.g.*, *Quintanilla v. K–Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493–95 (Tex. 1991). The economic loss rule bars the recovery of damages in tort where the plaintiff does not suffer an injury that is independent and separate from the economic losses

recoverable under a breach of contract claim. *See Narvaez v. Wilshire Credit Corp.,* 757 F. Supp. 2d 621, 634 (N.D. Tex. 2010). A party can state a tort claim related to a contractual setting when "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).

14.    Plaintiffs' tort claims sound in contract on the basis they concern the enforcement of Loan Agreement provisions related to foreclosure. [Doc. 1-1, Page 6 at ¶¶ 4.0 – 4.5 and 5.10] Plaintiffs do not (and cannot) identify a duty owed to them outside the contractual undertakings provided by the terms of the Loan Agreement. Under Texas law, there is no special duty relationship between a mortgagor and mortgagee that gives rise to a standalone duty of good faith and fair dealing. *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.,* 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi, 2005, pet. denied); *Milton*, 508 Fed. App'x at 329 (rejecting claim of negligence based on foreclosure while loan modification application pending). Further, Plaintiffs have not alleged they have sustained an injury arising from liability independent from the fact a contract exists between the Plaintiffs and Defendants. *See Sw. Bell Tel.*, 809 S.W.2d at 494.  Consequently, the economic loss rule bars Plaintiffs' tort claims.

**C.    Plaintiffs' fraud claim fails as a matter of law.**

15.    Plaintiffs generically assert a claim for fraud and fraud in a real estate transaction under Tex. Bus. Com. Code § 27.01 claiming material misrepresentations were made with regard to a repayment plan and that Defendants would not proceed with foreclosure if certain documents and payments were made by Plaintiffs. [Doc. 1-1, Page 10 at ¶ 5.6 – 5.8]  Plaintiffs claim the "false representations or promises were made for the purposes of inducing Plaintiffs to enter into her respective contracts and written agreements with Defendant Bank, and Plaintiffs

relied on those false, material representations and promises in entering into the real estate transactions." [Doc. 1-1, at ¶ 5.8]

16. "The elements of fraud in Texas are (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation[,] the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Matthews v. Bank of America,* No. 4:13-cv-291, 2014 WL 12575852, at * 3 (E.D.Tex. Feb. 24, 2014) (citing *Shandong Yinguang Chem. Indus. Joint Stock Co. Ltd., v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010)); *see also Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). To state a claim for fraudulent inducement under Texas law, a plaintiff must prove the basic elements of fraud as well as an underlying contract which was induced. *Id.* (citing *Kevin M. Ehringer Enters., Inc. v. McData*, 646 F.3d 321, 325 (5th Cir. 2011)); *see also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998); *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001)).

17. "The statute of frauds may bar a claim for fraudulent inducement when a party casts the complaint in the form of a fraud cause of action, but is actually attempting to recover damages for breach of an unenforceable oral contract." *Id.* at *4 (citing *Choi v. McKenzie,* 975 S.W.2d 740, 745 (Tex.App.—Corpus Christi, 1998, pet. denied). "The basis for any fraudulent inducement claim is an executed contract that was procured by fraud, without which it would not have been executed, and the damages sought must flow directly from that contract." *Id.* (citing

*ISG State Operations, Inc. v. Nat'l Heritage Ins. Co.,* 234 S.W.3d 711, 718 (Tex.App.—Eastland 2007, pet. denied).

18.     Here, Plaintiffs failed to allege there was a contract executed with regard to the purported repayment plan. Even if they could, Plaintiffs cannot satisfy their burden that such a contract was procured by fraud. In fact, Plaintiffs concede in their complaint that they discussed their inability to make their mortgage payments with MidFirst Bank and "continued to have discussion to avoid foreclosure…" [Doc. 1-1, at ¶¶ 4.3 – 4.4]. Consequently, Plaintiffs' Complaint on its face indicates they initiated the attempts to set up a repayment plan, so they are estopped from claiming that any such agreement was procured by fraud.

19.     Further, "a loan transaction, even if secured by land, is not considered to come under the section of the Texas Business and Commerce Code governing fraud in real estate and stock transactions." *Siens v. Trian, LLC,* No. A-11-CV-075-AWA, 2014 WL 1900737, at *5 (W.D. Tex. 2014) (quoting *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 343 (5th Cir. 2008). Like *Siens,* MidFirst did not sell or contemplate to sell real estate contracts to Plaintiffs, and any purported fraud claim Plaintiffs claim arises out of a loan transaction. Accordingly, Plaintiffs' statutory fraud in a real estate transaction claim fails as a matter of law. *Id.* at *5.

**D.     Plaintiffs' breach of contract claim fails.**

20.     Plaintiffs assert a breach of contract claim against MidFirst based on their allegation that MidFirst entered into a loan modification agreement. [Doc. 1-1, at ¶ 5.10]. Plaintiffs claim MidFirst breached that contract by failing to provide proper notices and by wrongfully seeking foreclosure in violation of their contract. *Id.*

21.     The elements of a breach of contract in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by

the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Allamon v. Acuity Specialty Products, Inc.,* 877 F.Supp.2d 498, 506 (E.D.Tex. 2012) (citing *Am. Gen. Life Ins. Co. v. Kirsh,* 378 Fed. Appx. 379, 383 (5th Cir. 2010)).

22.     Plaintiffs fail to state which sections of the Note or Deed of Trust that were breached or explain how MidFirst's acts allegedly violated those sections. Plaintiffs' claim thus falls short of meeting the pleading requirements in *Iqbal. Ashcraft v. Iqbal,* 556 U.S. 662 (2009); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Accordingly, Plaintiffs' breach of contract action fails and should be dismissed.

23.     Notwithstanding, Plaintiffs concede in their Complaint that MidFirst gave the requisite notices relating to foreclosure of the Property. Specifically, Plaintiffs allege that "Defendants began the notice of acceleration and posting requirements *as contractually required by the loan documents/deed of trust, and state law*." [Doc. 1-1, at ¶4.3] For the reasons stated above, Plaintiffs' breach of contract claim fails and should be dismissed.

**E.     Plaintiffs' are not entitled to damages.**

24.     Plaintiffs allege they incurred "actual, consequential, and/or compensatory damages…" including but not limited to the loss of their home, loss of proceeds from the sale of their home, physical and mental pain and anguish, and damage to their credit. [Doc. 1-1, at ¶ 7.0] They seek attorneys' fees [Doc. 1-1, at ¶ 8.0] and exemplary damages [Doc. 1-1, at ¶ 9.0]

25.     <u>*Loss of home / proceeds:*</u>  As stated previously, Plaintiffs have improperly pled attempted wrongful foreclosure which is not a recognizable cause of action. Further, the Court's records show that the foreclosure sale was restrained the day before foreclosure sale, and Plaintiffs failed to allege that a foreclosure sale actually occurred (which it did not). Therefore, Plaintiffs are not entitled to damages relating to loss of home and/or proceeds from the sale of

the Property.

26.     *Mental anguish:* Plaintiffs' request for mental anguish damages is barred by the economic loss doctrine. "The economic loss rule generally precludes recovery in tort where a plaintiff's only injury is an economic loss to the subject of a contract." *Sgroe v. Wells Fargo Bank, N.A.,* 941 F.Supp.2d 731, 749 (E.D. Tex. 2013) (citing *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.,* 260 S.W.3d 529, 541 (Tex.App.—Tyler 2008, pet. denied)). "When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Id.* at 749-50 (citing *UMLIC VP LLC v. T&M Sales and Envtl. Sys., Inc.,* 176 S.W.3d 595, 614 (Tex.App.—Corpus Christi 2005, pet. denied). "The focus of the rule 'is on determining whether the injury is to the subject of the contract itself.'" *Id.* at 750 (citing *Academy,* 260 S.W.3d at 541). "The rule restricts contracting parties to contractual remedies for such economic losses, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Id.* at 750 (citing *Lamar Homes, Inc. v. Mid-Continent Cas. Co.,* 242 S.W.3d 1, 12–13 (Tex. 2007). "If the action depends entirely on pleading and proving the contract in order to establish a duty, the action remains one for breach of contract only, regardless of how it is framed by the pleadings." *Id.* (citing *OXY USA, Inc. v. Cook,* 127 S.W.3d 16, 20 (Tex.App.-Tyler 2003, pet. denied)). "Thus, in order for a tort duty to arise out of a contractual duty, i.e., negligent failure to perform a contract, the liability must arise independent of the fact that a contract exists between the parties; the defendant must breach a duty imposed by law rather than by the contract." *Id.* (citing *Sw. Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex. 1991).

27.     Here, Plaintiffs fail to include any factual statement explaining the basis for their request for mental anguish damages. They simply state that Defendants' conduct was carried out

willfully, maliciously, oppressively and constituted a conscious indifference to Plaintiffs' rights or welfare without explaining what the conduct was to which Plaintiffs refer. Notwithstanding, Plaintiffs' claims sound in contract. Therefore, the economic loss rule bars recovery of mental anguish damages.

28.    *Attorneys' Fees:*  To recover attorneys' fees, Plaintiffs must prevail on a cause of action for which attorneys' fees are recoverable. *Eason v. Deutsche Bank National Trust Company,* Civil Action No. H-18-717, 2018 WL 3104992, at *3 (S.D. Tex. June 25, 2018) (citing *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997)). The record shows that Plaintiffs cannot as a matter of law establish their claims for wrongful foreclosure, breach of contract, fraud or their tort claims. Accordingly, Plaintiffs are not entitled to attorneys' fees.

## IV. CONCLUSION

Plaintiffs fail to state a claim upon which relief can be granted. Accordingly, Defendant respectfully requests that its Motion to Dismiss be granted and Plaintiffs' claims be dismissed with prejudice. Plaintiff further requests all relief, at law or in equity, to which it is entitled.

Respectfully submitted,

**BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP**

*/s/ Crystal Gee Roach*
Crystal Gee Roach
State Bar No.: 24027322
Email: CrystalR@bdfgroup.com
4004 Belt Line Road, Suite 100
Addison, Texas 75001-4320
(972) 340-7801
(972) 341-0734 (Facsimile)

ATTORNEYS FOR DEFENDANT
MIDFIRST BANK

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served as indicated on July 23, 2018, to the following:

Via ECF
Ricardo R. Godinez
Godinez Law Firm, P.C.
2415 N. 10th Street
McAllen, Texas 78501
Attorney for Plaintiffs

Via ECF
Mark Hopkins
Shelley Hopkins
Hopkins Law, PLLC
3809 Juniper Trace, Suite 101
Austin, Texas 78738
*Attorneys for Defendant BDFTE*

*/s/ Crystal Gee Roach*
Crystal Gee Roach